**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| KAREN CHRISTINE DAILEY,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. CV 07-5508-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 27, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 4, 2007, and February 27, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 19, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on June 23, 1951. [Administrative Record ("AR") at 51, 54.] She has a high school education and has attended some college. [AR at 68, 275.] Plaintiff has past relevant work experience as, among other things, a credit representative, appointment clerk, telemarketer, and sales agent. [AR at 63, 275-79.]

On March 15, 2002, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since January 23, 2002, due to fibromyalgia, depression, migraines, spastic colon, severe dental problems, and chronic pain. [AR at 14, 51-53, 61-71, 300.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 37-48.] A hearing was held on July 7, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 263-90.] A medical expert and a vocational expert also testified. [AR at 266-74, 284-89.] On December 3, 2003, the ALJ determined that plaintiff was not disabled. [AR at 11-22.] Plaintiff requested review of the hearing decision. [AR at 9-10.] The Appeals Council denied plaintiff's request for review on August 3, 2004. [AR at 4-5.]

Plaintiff then filed an action in District Court, Case No. CV 04-7388-PLA, challenging the Commissioner's decision. On February 16, 2006, the Court remanded the matter with instructions to further assess plaintiff's credibility. [AR at 330-40.] On May 1, 2006, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2006 Order. [AR at 341-45.] On September 11, 2006, a second hearing was held, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 483-508.] A medical expert also testified. [AR at 498-505.] On February 28, 2007, the ALJ determined that plaintiff was not disabled. [AR at 296-309.] Plaintiff filed an untimely request for review of the hearing decision. [AR at 294-95.] When the Appeals Council denied plaintiff's request for review on June 22, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 291-93.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

1 claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in
2 substantial gainful activity, the second step requires the Commissioner to determine whether the
3 claimant has a "severe" impairment or combination of impairments significantly limiting her ability
4 to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
5 If the claimant has a "severe" impairment or combination of impairments, the third step requires
6 the Commissioner to determine whether the impairment or combination of impairments meets or
7 equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,
8 Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.
9 If the claimant's impairment or combination of impairments does not meet or equal an impairment
10 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
11 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
12 and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform
13 past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
14 case of disability is established. The Commissioner then bears the burden of establishing that the
15 claimant is not disabled, because she can perform other substantial gainful work available in the
16 national economy. The determination of this issue comprises the fifth and final step in the
17 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
18 at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 300, 308.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: headaches, gastrointestinal disorders, and neck and joint pains. [AR at 301, 308.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ

further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform "medium work,[2] not requiring more than occasional bending, stooping or crouching." [AR at 301, 308.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a sales clerk, charge account clerk, appointment clerk, business service sales agent, and telemarketer. [AR at 307-08.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process. [AR at 308.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in: (1) determining that plaintiff's anxiety and depression were not severe impairments at step two of the five-step evaluation process; (2) determining plaintiff's RFC at step four of the five-step evaluation process; (3) failing to call a medical expert with the appropriate medical specialty at the hearing; and (4) assessing plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 5. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**MENTAL IMPAIRMENT**

Plaintiff contends that the ALJ improperly determined that plaintiff's mental impairments were non-severe. Joint Stip. at 5-10. Defendant argues that the ALJ properly concluded that plaintiff did not have a severe mental impairment. Joint Stip. at 10-12.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c). If a plaintiff is able to perform medium work, he or she is also deemed able to perform sedentary and light work. See id.

5

evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling ("SSR") 85-28[3])); see also Smolen, 80 F.3d at 1290 (citations omitted); 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

In the decision, the ALJ found that plaintiff "has had a minimal amount of specialized mental health treatment." [AR at 307.] The ALJ also found that "there is little in the way of abnormal

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

psychiatric signs." [Id.] The ALJ further found that plaintiff "has improved subjectively and objectively from psychotropic medications" and "current[ly] takes only Xanax, as consistent with [her] treating source['s] assessment of anxiety." [AR at 307.] Based on these findings, the ALJ concluded that "[t]he mental component is 'non-severe' and does [not] compromise [plaintiff's] ability to work." [AR at 307.] As discussed below, the ALJ's findings are insufficient, and thus her conclusion requires remand.

The ALJ's finding that plaintiff had a minimal amount of specialized mental health treatment is not wholly accurate. To the extent that the ALJ found plaintiff's mental impairments non-severe based on a lack of specialized treatment from a mental healthcare provider,[4] such a finding is insufficient under the specific circumstances of this case. An ALJ may "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). Some courts, however, have rejected the notion that a specialist's opinion should be given greater weight than a generalist who treated and examined the claimant in instances where the generalist practices in the area of specialty. In Sprague v. Bowen, the court found that a treating physician's opinion was medically acceptable notwithstanding his lack of specific expertise in psychiatry because "primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" 812 F.2d 1226, 1232 (9th Cir. 1987) (citation omitted). The Sprague court concluded that a duly licensed, primary care physician can practice and render psychiatric services and give a qualified opinion as to how the claimant's mental state impacted her physical disability. Id. (citations omitted). Similarly, in Lester, the court held that the ALJ could not disregard the treating physician's opinion regarding the claimant's mental functioning solely because the treating physician was not a mental health expert. 81 F.3d at 833. The Lester court found that the treating physician, who specialized in treating chronic pain, provided treatment for the claimant's psychiatric impairment and that his opinion constituted

---

[4] At the hearing on September 11, 2006, the ALJ noted that plaintiff had not been treated by a mental healthcare provider. [AR at 503.]

competent psychiatric evidence, notwithstanding the fact that he was not a board-certified psychiatrist. Id.

Even assuming that plaintiff was never treated by a mental healthcare professional,[5] the medical evidence shows that plaintiff was treated for depression and anxiety by medical sources at two Los Angeles County facilities over a period of seven years.[6] [AR at 99, 105, 117, 140, 175-76, 179-81, 186-90, 193-97, 200, 260, 383, 386-87, 391-93, 397, 399, 401, 403, 405, 408, 410, 412, 414, 416, 418, 420, 422, 424, 426-28, 430-38, 441-72.] Plaintiff's treatment records reveal a history of prescriptions for pyschotropic medications, namely Zoloft and Xanax.[7] [AR at 427, 430-37, 441-44, 447, 449, 451, 453, 455, 457, 459, 462, 464, 466, 468, 470-72.] On May 1, 2002, plaintiff was diagnosed with depression. [AR at 200.] On June 10, 2002, plaintiff indicated that she has suffered from depression since the age of fifteen. [AR at 196.] She further indicated that she isolates herself, and has insomnia, appetite fluctuations, "thoughts of life not being 'worth it,'" and no motivation. [AR at 196.] Plaintiff was diagnosed with major depressive disorder, moderate, and anxiety, not otherwise specified, and was prescribed Zoloft. [AR at 196.] A progress note dated February 26, 2003, indicated that plaintiff "feels better" concerning her depression, but still has room for improvement. [AR at 181.] Plaintiff was diagnosed with major depressive disorder, mild, and her prescription for Zoloft was increased. [AR at 181.] On April 2, 2003, plaintiff was noted as having a lot of anxiety secondary to undergoing tests and was

---

[5] There is some evidence in the record to suggest that plaintiff was treated by a psychiatrist for her mental problems. The record includes a referral to "psychiatry" in May, 2002, progress notes referencing ongoing psychiatric treatment and recommending follow up with psychiatry, "Behavioral Health" progress notes presumably signed by a psychiatrist, and plaintiff's testimony that she had been treated by a psychiatrist for a year. [AR at 106, 111, 181, 193, 195-97, 200, 277, 502-04.]

[6] On several occasions from July 2003 through May 2006, plaintiff was diagnosed only with anxiety. [AR at 383-472.]

[7] Zoloft is used in the treatment of, among other things, depression, panic attacks, and social anxiety disorder (social phobia). Xanax is used in the treatment of anxiety and panic disorders. http://my.webmd.com/drugs/index-drugs.aspx (search "Find A Drug," by "Drug Name"; then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow "Uses" tab).

prescribed Xanax. [AR at 178.] On May 29, 2003, plaintiff was assessed with active depression with no suicidal thoughts. [AR at 175.] Plaintiff indicated that she thought the Zoloft "has helped." [AR at 175.] Her dosage of Zoloft was again increased. [AR at 176.] On July 17, 2003, plaintiff complained of anxiety attacks and was referred to a psychologist/psychiatrist for anxiety and depression. [AR at 233-34.] On October 23, 2003, Dr. Leonardo A. Garduno completed a Medical Evaluation form in which he noted that plaintiff was temporarily disabled. [AR at 259-62.] He further noted that plaintiff suffered from anxiety and was taking Xanax. [AR at 260-61.] On March 16, 2004, plaintiff's prescription for Xanax was increased. [AR at 451.] On April 27, 2004, and March 21, 2005, Dr. Garduno again found plaintiff temporarily disabled. [AR at 422, 446.] In sum, the treatment records reflect diagnoses of depression and anxiety, prescriptions for psychotropic medications, and findings of "temporarily disabled" based on anxiety. Such evidence constitutes competent psychiatric evidence, and thus the ALJ's reliance on a lack of specialized mental health treatment to conclude that plaintiff's mental impairments are non-severe was insufficient.

Moreover, the ALJ's finding that plaintiff had improved from psychotropic medications and was currently only taking Xanax for anxiety is inadequate to justify her non-severity determination. Although the ALJ may consider whether plaintiff's impairments improved with medications, the ALJ may not rely on improvement from medications alone to demonstrate that plaintiff's mental impairments are not severe. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[t]hat a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); see, e.g., Fillou v. Heckler, 622 F. Supp. 346, 350 (D.C. Ill. May 9, 1985) ("[s]ymptom free intervals do not preclude a finding of disability with respect to mental impairments.") (citation omitted); Herod v. Astrue, 2008 WL 2557484, *5 (C.D. Cal. June 23, 2008) ("[a]lthough the ALJ relied on the fact that medication diminished [the claimant's] symptoms, this fact alone does not demonstrate that [the claimant's] mental impairment is not severe.") (citation omitted); Bennett v. Barnhart, 264 F. Supp. 2d 238, 256 (W.D. Pa. Feb. 25, 2003) (the mere fact that a claimant functions well on medication is not necessarily indicative of the claimant's ability to perform basic work activities).

1  Nor may the ALJ consider only those portions of the record that favor her ultimate
2 conclusion. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to
3 ignore competent evidence in the record in order to justify her conclusion); see also Day v.
4 Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion
5 "simply by isolating a specific quantum of supporting evidence"); Fiorello v. Heckler, 725 F.2d 174,
6 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of
7 medical testimony," she cannot simply selectively choose evidence in the record that supports her
8 conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all
9 the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation
10 omitted). Here, the ALJ did just that in asserting that plaintiff's mental condition improved from
11 medications. Although there is some indication in the record that plaintiff's depression improved
12 with medication [AR at 181, 186, 190, 195], the most recent progress note indicating any such
13 improvement also noted that plaintiff still had room for improvement. [AR at 181.] In addition, the
14 progress notes indicate that plaintiff was prescribed Zoloft in increasing dosages, ranging from 25
15 milligrams to 100 milligrams, over the course of her treatment for depression. [See, e.g., AR at
16 175-76, 181, 189, 196.] Moreover, at the hearing on July 7, 2003, plaintiff testified that she was
17 "very depressed and suicidal the past couple of years." [AR at 281.] Although plaintiff stated that
18 she was "doing a little better" on Zoloft, she also stated that she avoids going over bridges and
19 high spots because she does not really trust herself as she is sometimes suicidal every day. [AR
20 at 281.] Plaintiff also testified that she isolates herself and is unable to maintain a full-time job
21 because it is difficult for her to deal with people. [AR at 275, 280-81, 284.] Plaintiff further testified
22 that she has difficulty with concentration and completing tasks. [AR at 282.] At the hearing on
23 September 11, 2006, plaintiff testified that she suffers from depression "which is very difficult some
24 days." [AR at 487.] At both hearings, plaintiff indicated that she had been seeing a psychiatrist
25 during the past year until the facility that was providing her psychiatric services discontinued its
26 psychiatric outpatient clinic. [AR at 277, 502-04.] Plaintiff indicated that she "really feel[s] like she
27 slipped back" since the discontinuation of the psychiatric clinic. [AR at 280.] She further indicated
28 that she has "more bad days," and explained that since she has not been seeing a psychiatrist and

does not have the support system and friends that she used to have, she has not improved. [AR at 283.]

Further, there is no indication in the record that plaintiff's anxiety disorder improved from the use of psychotropic medications. Rather, the evidence suggests that it did not. First, plaintiff was prescribed Zoloft and Xanax in increasing dosages over the course of her treatment for anxiety. As noted above, plaintiff's dosage of Zoloft was increased from 25 milligrams to 100 milligrams. Plaintiff's dosage of Xanax was increased from 0.5 milligrams once or twice a day as needed to 1 milligram once or twice a day as needed. [AR at 427, 430-31, 433, 435, 437, 442, 444, 449, 451, 453, 455, 457, 459, 468, 470.] Next, while it is not entirely clear from the record whether plaintiff was prescribed Zoloft and Xanax concurrently to treat her anxiety [AR at 467, 471-72], plaintiff's prescription for Xanax was clearly a modification to her medication regimen, which initially consisted of only Zoloft for the treatment of her anxiety. Additionally, there are no statements by plaintiff or her physicians in the record indicating that her anxiety disorder improved with medication. Finally, Dr. Garduno, who treated plaintiff for an extended period, found her temporarily disabled despite the fact that plaintiff was taking anti-anxiety medication. [AR at 261.] The progress notes, medication modifications, dosage increases, temporary disability finding, and plaintiff's testimony undermine the ALJ's characterization of plaintiff's mental condition as being improved from psychotropic medications.

Furthermore, the ALJ's finding that "there is little in the way of abnormal psychiatric signs" is inadequate to support her conclusion that plaintiff's mental impairments are non-severe.[8]

---

[8] Insofar as the ALJ found that the diagnoses of depression and anxiety made by plaintiff's treating sources were not supported by sufficient abnormal psychiatric signs, the ALJ had a duty to further develop the record in order to determine the basis of those opinions. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). As a general rule,

"Mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness. [] A strict reading of the statutory requirement that an impairment be 'demonstrable by medically acceptable clinical and laboratory diagnostic techniques' is inappropriate in the context of mental illnesses." See Hartman v. Bowen, 636 F. Supp. 129, 132 (N.D. Cal. Apr. 2, 1986) (citations omitted). When mental illness is part of a disability claim, "clinical and laboratory data may consist of the diagnoses and observations of professional psychiatrists and psychologists." See id. (citation omitted); see also Day, 522 F.2d at 1156 ("[d]isability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings."); Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984) (while objective diagnoses and observations are the most important parts of the physicians' reports, the ALJ's reliance on the inability of the physicians to support their findings with objective laboratory findings does not constitute a legally sufficient reason for rejecting their conclusions) (citing Day, 522 F.2d at 1156-57); Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) (merely to state that a medical opinion is not supported by enough objective findings "does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Here, the record contains numerous diagnoses of depression and anxiety over an extended period, prescriptions for psychotropic medications, and findings of temporary disability based on plaintiff's anxiety disorder. Although the record is not replete with abnormal psychiatric findings, the record shows that plaintiff had suicidal ideations and lack of motivation. [AR at 196.] See Sprague, 812 F.2d at 1232 (when the treating physician diagnosed the claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, the ALJ erred in finding that the claimant had not set forth sufficient evidence to substantiate the mental impairment); see also Smolen, 80 F.3d at 1285 (the opinions of treating physicians are

---

the record will be considered "inadequate" or "ambiguous" when a medical source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted).

generally given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant). Additionally, the testimony of the medical expert suggests that plaintiff has mental limitations based on her depression and anxiety. On cross examination, plaintiff's counsel asked the medical expert if he found any medical reason to provide limitations for plaintiff based on the records that he reviewed. [AR at 505.] With the caveat that he is not an expert in psychiatry, the medical expert testified that he thought plaintiff had limitations based on the psychiatric records. [AR at 505.] Further, the psychological evaluation performed by Dr. Steven I. Brawer on November 15, 2006, lends support to the findings of plaintiff's treating sources concerning her depression and anxiety. [AR at 476-82.] Dr. Brawer noted that plaintiff's mood was agitated initially and generally irritable. [AR at 478.] He also noted that symptoms of depression were reported and present suicidal ideation was acknowledged, though serious intent was denied. [Id.] Dr. Brawer found that plaintiff had a mild-to-moderate impairment on complex attentional tasks also requiring mental flexibility in shifting sets. [AR at 481.] Although Dr. Brawer noted that plaintiff seems capable of following a routine and organizing herself for basic tasks, he indicated that she may have difficulty sustaining motivation and stamina given her dysphoria and somatic complaints. [AR at 481.] Given her irritability and proneness to interpersonal conflict, Dr. Brawer further indicated that plaintiff may have mild limitations in sustaining cooperative relationships with coworkers and supervisors, and would function most optimally in a semi-isolated work setting. [AR at 481.] Dr. Brawer diagnosed plaintiff with depressive disorder, not otherwise specified, and estimated her intellectual functioning to be in the low average range.[9] [AR at 481.] Taken as a whole, the

---

[9] The ALJ's finding that Dr. Brawer did not offer any definite limitations, but described only that plaintiff "may" have certain limitations, should have triggered the ALJ's duty to seek further development of the record. [AR at 307.] See fn. 8, supra. While Dr. Brawer indicated that plaintiff may have difficulty sustaining motivation and stamina, the impact of such difficulty on plaintiff's ability to perform basic tasks is not at all clear. The ALJ should recontact Dr. Brawer on remand in order to resolve any ambiguities and fully develop the record. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the ambiguity by recontacting the medical source).

evidence does not support the ALJ's conclusion that plaintiff's mental impairments are non-severe based on lack of abnormal psychiatric signs.

The ALJ's conclusion that plaintiff's mental impairments are non-severe is not supported by substantial evidence. By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. The record as a whole suggests that plaintiff meets the de minimis test at step two of the sequential analysis. Accordingly, remand is warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the severity of plaintiff's mental impairments at step two of the sequential analysis. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[10]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: May 22, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] As the ALJ's consideration on remand of plaintiff's mental impairments may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues at this time.